570 A.2d 1378

**LIMELIGHT LIMOUSINE, INC., Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1989.

Decided Feb. 27, 1990.

523

Gerard Gornish, of counsel, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, for petitioner.

Dennis J. Buckley, Asst. Counsel, with him, H. Kirk House, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

Rand Spear, with him, Timothy Costello, Edelstein, Martin & Spear, Philadelphia, for intervenor, Lady Liberty Transp. Co., Inc.

Before CRAIG and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

Limelight Limousine, Inc. (Limelight) appeals from the order of the Pennsylvania Public Utility Commission (Commission) which adopted the Initial Decision of the Administrative Law Judge's (ALJ) granting to Lady Liberty Trans-

portation Company, Inc. (Lady Liberty) the right to transport, as a common carrier by motor vehicle, persons from points in the City and County of Philadelphia to the Philadelphia International Airport.

■ On February 5, 1988, Lady Liberty filed an application seeking authority to provide airport transfer service throughout Philadelphia. Subsequently, the application was protested by other airport transfer companies in the Philadelphia area. As a result, Lady Liberty filed a restrictive amendment to the application through which it agreed to restrict its service to the Center City and West Philadelphia areas of Philadelphia.[1] Limelight renders substantial service to this area of Philadelphia, and as such did not agree to the restrictive amendment nor withdraw its protest to the application. Subsequent to the approval of Lady Liberty's application by the Commission, Limelight brought the instant action.[2]

The issues presented by Limelight in its appeal to this Court are whether substantial evidence exists to permit the Commission to grant airport transfer authority to Lady Liberty; whether appropriate Commission evidentiary criteria were met by Lady Liberty prior to the grant of authority;[3] and whether evidence exists to demonstrate that West

1. This area was defined as the area between Vine Street and South Street on the north and south respectively and between the Delaware River on the east and Fifty–Fourth Street on the west with the addition of two hotels on City Line Avenue. N.T., pp. 11–15.

2. In a matter involving a certificate of public convenience, this Court's scope of review is to determine whether the Commission committed an error of law, whether substantial evidence exists to support its findings or whether constitutional violations were committed. *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 101 Pa.Commonwealth Ct. 244, 515 A.2d 1048 (1986).

3. Evidentiary criteria used to decide motor common carrier applications are set forth in 52 Pa.Code § 41.14 and provide that:

(a) An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful public purpose, responsive to a public demand or need.
(b) An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service, and, in addition, author-

Philadelphia and Center City constitute a contiguous "band" of territory.

■ Limelight initially argues that there exists no testimony of the need for service in Center City, that testimony indicates that there were at least five carriers adequately serving the area and that most of the evidence offered shows a need for an airport transfer service only in West Philadelphia. Both the ALJ and the Commission found that the testimony of the witnesses determined a need for service not only in West Philadelphia but also Center City. A thorough review of the record evidences that the testimony of these witnesses substantially supports a public demand for the service to be provided by Lady Liberty. Indicative of such testimony is the following:

Q. Miss George, are you currently employed?

A. Yes, I am.

Q. Could you tell us where?

A. At the Warwick Hotel.

Q. Where is that located?

A. 17th and Locust Streets.

. . . .

Q. Now, Miss George, have you ever experienced any problems or difficulties in making the necessary arrangements to have the hotel guests taken to and from Philadelphia International Airport?

A. Yes, I do quite often.

. . . . .

Q. Does this happen often or infrequently?

A. Every day.

Q. I see. What companies do you call?

ity may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally.

(c) The Commission will grant motor common carrier authority commensurate with the demonstrated public need unless it is established that the entry of a new carrier into the field would endanger or impair the operations of existing common carriers to an extent that, on balance, the granting of authority would be contrary to the public interest.

A. Okay, there's Knights, Limelight, Dave's, and another one.

Q. So you call at least two or three companies?

A. Yes.

Q. And between all of the companies, they're still not able to service the hotel guests?

A. No, there [sic] not. And even if they say that they're, they arrive too late when the person already took a taxicab because they're over-busy. There [sic] just too busy. And I'm worried now with the other two hotels opening at the end of the year that we're really going to be swamped.

N.T., pp. 53, 55–56. *See also*, N.T., pp. 58, 66, 72–74, 78, 82–85, 98, 100, 104, 106, 126–127, 129–130, 206–208, 212–214; ALJ Decision, Findings of Fact Nos. 2, 8–12, pp. 42–43, 49; Commission Decision, pp. 6–8, 11.

Limelight also contends that Lady Liberty has not sustained its burden of demonstrating responsiveness to a public demand or need pursuant to 52 Pa.Code § 41.14(a). As indicated by the ALJ in his decision, the unrebutted testimony of Glen J. Moton (Moton), general manager of Yellow Cab Owners and Drivers' Association and Wyniaco Thomas (Thomas), operator of A–Plus Limousine, establishes that there is a need by the people in Center City and West Philadelphia for airport transfer to Philadelphia and back to their homes or business establishments. N.T., pp. 82–85, 98, 100; ALJ Decision, p. 43. Additionally, as both the ALJ and the Commission found, the testimony of representatives of four hotels all within the amended application area [4] indicate that their current needs exceed the services they are receiving. N.T., pp. 55–56, 58, 66, 72–74, 78, 104, 106, 126–127, 129–130. The record fully supports the finding that the proposed service will serve a useful public purpose, be responsive to a public demand or need with

4. Testimony was received by representatives of the following hotels: the Warwick Hotel; Sheraton University City Hotel; Divine Tracy Hotel; and the Penn Tower Hotel.

respect to future need and serve as a backup for existing service under 52 Pa.Code § 41.14(a).[5]

Limelight next argues that the Commission violated precedent in ignoring Lady Liberty's failure to address or satisfy the Commission's criteria set forth in *Re: Richard L. Kinard, Inc.*, 58 Pa.Pub.Util.Comm. 548 (1984). Under *Kinard*, the introduction of shipper support testimony on the issue of need would not satisfy the useful public purpose section burden (52 Pa.Code § 41.14(a)) to be carried by the applicant. The applicant must also show an overall public benefit referred to collectively in *Kinard* as alternatives to "inadequacy." They are:

(1) Different Service

(2) Efficiency

(3) Low Rates

(4) Future Need

(5) Backup Service

(6) Shipper Competition

(7) ICC Authority

(8) Certification of Authority

(9) Benefit to Applicant.

*Kinard*, at 551. Limelight further cites the Commission's recent decision in *Application of Care & Emergency, Inc.*, Docket No. A–00102221 (entered December 22, 1988) as support for its position that Lady Liberty failed to satisfy *Kinard* standards. In *Care & Emergency*, the ALJ recommended and the Commission ordered the denial of an application for similar airport transfer service when testimony of record included eleven support witnesses and three operating witnesses.

Our review of the record persuades us that the Applicant has failed to demonstrate in the record, support for

---

5. In addition to discussing Lady Liberty's ability to render airport transfer service under the criteria set forth in § 41.14(a), both the ALJ and Commission in their decisions set forth how Lady Liberty met the criteria of §§ 41.14(b) and (c). Upon appeal to this Court however, Limelight only contests Lady Liberty's ability to render service under § 41.14(a). Therefore, this Court shall not address Lady Liberty's ability under §§ 41.14(b) or (c).

the claimed [*Kinard*] alternatives to inadequacy. We recognize that it is not clear how many of the alternatives must be adequately satisfied in the record. However, it is reasonable to infer that certain of the criteria such as efficiency, lower rates or different service can alone satisfy the burden of proof. *Application of [Teo Filio DeJesus Cruz, t/d/b/a] DeJesus Carrier Service,* [Docket No. A–00107360] (entered October 12, 1988). *Care & Emergency,* p. 9.

In *Application of DeJesus,* Docket No. A–00107360 (entered October 12, 1988), the Commission granted authority to the applicant to operate a taxicab solely on the basis of different service to the City (Spanish speaking taxicab). While Limelight relies on *Care & Emergency* to defeat Lady Liberty's application, what Limelight has failed to observe is that in *Care & Emergency,* the applicant failed to adequately demonstrate in the record alternatives to inadequacy in order to satisfy *Kinard.* In *Application of DeJesus,* the applicant was granted authority because he had met the *Kinard* burden via different service to the City. Although Lady Liberty did not present the number of witnesses testifying in its behalf as did the applicant in *Care & Emergency,* both the ALJ and the Commission determined that Lady Liberty, through the witnesses it presented, met not only the *Kinard* alternative of different service but other *Kinard* alternatives as well:

> We are convinced by the unrebutted testimony of Thomas and Moton [employees of other airport transfer services in the Philadelphia area] that there are people in both the Center City and West Philadelphia band area who have a need for airport transfer to Philadelphia, and back to their residences or places of business, and who, for economic reasons, cannot reasonably afford taxicab transport to the same destination; passage by taxi might easily come to twice the amount payable to the airport transfer carrier.

> We are convinced by the testimony of the representatives of the four (4) hotels (all within the amended applica-

tion area) that their current needs exceed the service they are receiving. We find that this applicant qualifies, under the *Kinard* rule alternatives Nos. 1 [Different Service], 3 [Lower Rates], 4 [Future Need], and 5 [Backup Service], as to Section 41.14(a).

ALJ Decision, p. 43. Clearly, Lady Liberty's application was measured against *Kinard* and found to have satisfied its criteria.

Finally, Limelight argues that there was no evidence demonstrating that West Philadelphia and Center City constituted a contiguous "band" of territory. The Commission accepted the ALJ's finding regarding a band of territory from the Delaware River on the east to Fifty–Fourth Street on the west which the ALJ found to exist. Limelight contends that such a band does not exist either of need or of geography and that the most that has been shown is a need for service in West Philadelphia. However, as stated by the Commission:

> Use of the term "band" to describe the application territory is completely acceptable. In using it, the ALJ is attempting to describe the territory as limited in the restricted application itself. Since the territory is designated by city streets and river boundaries, and not identical to the City or County of Philadelphia or any legally defined section of the City, such a description is appropriate.

Commission Decision, p. 6. In addition, Mr. Shimmy Kahana, president of Limelight, testified that an agreement to divide territory resulted in assumption of service to West Philadelphia by Econoline Limousine (Limelight's competition). N.T., pp. 212–214. It is obvious to this Court that this agreement between carriers to divide territories is consistent with their own economic interest rather than with the need or demand for service in areas granted them by the Commission. Further, Lady Liberty was actually denied authority with respect to a portion of its application because it did not come forward with evidence to support a grant of authority to service two northern Philadelphia

hotels (Adams Mark Hotel and the Holiday Inn on City Line Avenue). ALJ Decision, pp. 44–46, Findings of Fact No. 14, Conclusion of Law No. 3. Limelight has thus failed to show how the use of the term "band" to designate the service area of Lady Liberty is improper.[6]

A review of the record demonstrates that the Commission's decision is supported by the evidence according to criteria established by the Commission codified at 52 Pa. Code § 41.14 and standards enunciated by the Commission in *Kinard* and further reflects that West Philadelphia and Center City constitute a band of territory for purposes of Lady Liberty's application. The Commission's order entered June 5, 1989 must therefore be affirmed.

ORDER

AND NOW, this 27th day of February, 1990, the decision of the Pennsylvania Public Utility Commission is affirmed.

---

6. Limelight also argues that the Commission's order cannot stand under the "substantial evidence" portion of this Court's scope of review. Having previously determined that the order of the Commission was supported by substantial evidence, this Court need not further address this issue.